**FIRST NAT. BANK OF LEEDY v. W. P. SEAWELL LBR. CO. et al.**

No. 17930. Opinion Filed March 6, 1928.

Rehearing Denied Feb. 26, 1929.

Tom Ruble and O. C. Wybrant, for plaintiff in error.

W. P. Hickok and R. N. Linville, for defendants in error.

LESTER. J. This cause was commenced in the district court of Dewey county, Okla., by the W. P. Seawell Lumber Company, plaintiff, against H. E. Livingston, W. F. Cuberly, and W. P. Hickok.

The petition alleged two causes of action. First cause of action declares against the defendant H. E. Livingston upon account of material furnished by the plaintiff to Livingston, and alleged that there was a balance due on said account in the sum of $2,749.54.

The second cause of action is against H. E. Livingston, W. F. Cuberly, and W. P. Hickok, and is based upon an account in favor of

the plaintiff for material furnished Livingston and upon a certain assignment made by Livingston to defendants Cuberly and Hickok.

It is alleged that said Cuberly and Hickok took an assignment from Livingston for the balance due Livingston on account of a certain contract made by said Livingston with the school board of consolidated school district No. 3 of Dewey county, Okla., and the petition further alleged that the said Cuberly and Hickok had collected the said monies due Livingston by reason of said assignment and power of attorney and refused to pay said plaintiff the amount due the plaintiff under the terms of said assignment.

The defendants Cuberly and Hickok filed their answer, in which they denied the allegations of the plaintiff's petition to the effect that they had converted said money to their own use, and further alleged that the money had been collected by them and deposited with the First National Bank of Leedy for the use and benefit of the creditors of said Livingston, and that a portion of said money had been paid by them to said creditors, and that they had assigned the sum of $1,587.75 to the plaintiff, which sum was on deposit with the First National Bank of Leedy.

Defendants Cuberly and Hickok filed a motion to make the First National Bank of Leedy a party to said action. Said motion was sustained by the court, and the bank thereafter filed its answer.

Trial was had to the court, which resulted in a judgment in favor of W. F. Cuberly and W. P. Hickok against the First National Bank in the sum of $1,587.75, and an additional sum of $31.62, and the First National Bank of Leedy prosecutes this appeal to reverse said judgment.

The court in said judgment also directed that the monies deposited by Cuberly and Hickok in the First National Bank of Leedy be applied to the claim of the plaintiff. The First National Bank of Leedy in its answer stated and alleged that they had furnished to H. E. Livingston a loan for the purpose of enabling him to engage in the erection and construction of a school building, and it was further understood that the said H. E. Livingston would pay the bank from funds derived on account of the erection of said building, and therefore said bank had a lien on said deposit by virtue of section 7434, C. O. S. 1921. Said section provides:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

The members of the school board consisted of F. H. Parks, clerk, and manager of the Seawell Lumber Company, said company being the plaintiff in this action; Mr. O. W. Long, and Harry S. Gilbert, director, and also assistant cashier of the First National Bank of Leedy.

H. E. Livingston executed and delivered to said W. F. Cuberly and W. P. Hickok an instrument of assignment which reads as follows:

"I hereby make, constitute and appoint as my true and lawful attorneys in fact, W. F. Cuberly and W. P. Hickok, to act for me in my stead in settling, adjusting, and concluding my contract with the school board of consolidated district No. 3, Dewey county, Okla., and to draw warrants still due me, or that may become due me on said contract, and for value hereby assign to my said attorneys in fact all balances due me on said contract or that may become due."

H. E. Livingston served a certain notice upon the school board, of which the following is a copy:

"You are advised that I have appointed W. F. Cuberly and W. P. Hickok, jointly and severally, my attorney in fact for me and in my stead to complete, settle, and conclude my contract to build the addition to the school house in said district, and to draw the school warrants and compensation that is or shall be due me on said contract, and that my rights and compensation under said contract are hereby assigned to said attorneys in fact."

W. F. Cuberly and W. P. Hickok served a notice upon the school board, of which the following is a copy:

"In regard to the construction of addition to the school building at Leedy in the above-mentioned school district, we beg to advise you and give you notice that Mr. H. E. Livingston, the contractor for the construction, on or about the 11th day of June, 1923, did, under date of Jan. 10, 1924, execute to us, W. P. Hickok and W. F. Cuberly, an appointment of power of attorney for him and in his behalf, to adjust, settle, and close with you the matters and things in connection with the final adjustment of his said contract, and further has assigned to us all compensation, school warrants, and credits due him or to become due him under and by virtue of the said contract, and directing the same to be issued and paid to us by you (the said appointment as attorney in fact and the said assignment having been

filed of record in the county records), the same to be used by us in liquidation of his affairs, debts, and obligation under said contract."

A warrant was executed by the school board for the sum of $1,990, representing the balance due from said school board to Livingston, said warrant was delivered to Cuberly and Hickok and by them deposited in the First National Bank of Leedy, and said bank issued and delivered to Cuberly and Hickok a memorandum of deposit of which the following is a copy:

"The First National Bank.

"Deposited by W. P. Hickok & W. F. Cuberly, Attys in fact for H. E. Livingston, Leedy, Oklahoma, 1-29-1924.

| "Please list each check separately. | | |
| --- | --- | --- |
| | Dollars | Cts. |
| Currency | | |
| Silver | | |
| Gold | | |
| Checks as follows | | |
| Bond Acct. | 1990 | 00 |
| 12 | | |
| Gilbert | | |
| Total | | |
| $ | | |

"See that all checks and drafts are indorsed."

W. P. Hickok testified in part as follows:

"A. Mr. Flint, as treasurer of the school district, indorsed the warrant payable and he and Mr. Gilbert agreed that we might deposit it in the bank and they would give us credit on the books of the bank for the amount, and we should then draw checks against it. We could do that. It was for the purpose of distributing the fund among the creditors. We immediately deposited that warrant in the bank and received credit of $1,990 and were given a deposit slip in the name of W. P. Hickok and W. F. Cuberly, attorneys in fact, and drew checks on the deposit in that form and in that manner. Mr. Livingston's name was not mentioned in the deposit or on the deposit slip or on any of the checks. Mr. Livingston had no authority over the deposit or control of it in any way. * * * The Court: Who were you talking to? A. Talking to the bank's officers. A. We informed them that we couldn't pay those notes; that we were instructed and were going to pay the claim against Mr. Livingston for labor and material in erecting the school house and that only. If there was anything over it might be applied to these notes. They first spoke to us like they thought perhaps we were liable on the bonds, if we were liable at all, for their notes. After this check had been turned down by the bank I was in Leedy and talked with Mr. Gilbert, the assistant cashier, about the transaction and turning it down. A. He said—this conversation was in front of the bank there at Leedy—that that evening when we deposited that warrant in the bank and were drawing checks to distribute it among the materialmen and laborers that he and Mr. Flint were scared to death for fear we were going to right then and there draw a check to Mr. Parks for his balance before they had time to go to the books of the bank and charge it off against the balance due the bank on the bank's books. He said that it was their object to get this deposit made in the bank there and grab it. * * * Q. The bank officials were members of the school board and understood that? A. Oh, yes. Q. Who were the bank officials at the time you had that discussion? A. I talked with Mr. Flint and Mr. Gilbert, both, with reference to paying these notes and letting the material bills and so on go. I knew we couldn't pay them both. I told them that in any event we were not liable for this indebtedness of Mr. Livingston to the bank; that we might be to the other, and Mr. Livingston understood it and he had authorized us to pay the others and that was what we were going to do and Mr. Gilbert told me afterwards that when we were drawing those checks in the bank they were scared to death that we would deliver the check before they could transfer the funds."

Cuberly and Hickok, after the warrant had been delivered to them, would have been at liberty to dispose of the warrant issued them by the school board in any manner consistent with the terms of the assignment from Livingston.

As we view the facts, Cuberly and Hickok became customers of the bank, and as such customers, the bank would have no lawful right to deduct from the account of Cuberly and Hickok any amount of indebtedness due the bank from Livingston.

It will be noted from section 7434, C. O. S. 1921, that a general lien is dependent on possession of property in the hands of the bank belonging to a customer.

Cuberly and Hickok had made the bank their depository for the purpose of carrying out the terms of the trust assignment executed by Livingston.

From the record it appears that Hickok testified that:

"A. Mr. Flint, as treasurer of the school board indorsed a warrant payable and he and Mr. Gilbert agreed that we might deposit it in the bank and they would give us credit on the books of the bank for the amount, and we should then draw checks against it, * * * for the purpose of distributing the fund among the creditors."

As heretofore noticed, Flint and Gilbert were

officers of the bank, and in compliance with said agreement and understanding, the bank did honor and pay each and every check drawn by Cuberly and Hickok against said account save and except the check drawn in favor of the Seawell Lumber Company. The bank gave as its reasons for refusing to honor and pay the check drawn to the Sea-Well Lumber Company that it had deducted the sum of $1,587.75 from the account of Cuberly and Hickok and applied the same to certain notes held by the bank against Livingston.

In 7 C J. 307, pp. 631-32, the rule relating to a special deposit is stated as follows:

"A deposit may be for a specific purpose, as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit."

In the case of Southwest National Bank v. Evans, 94 Okla. 185, 221 Pac. 53, syllabus paragraph numbered 1, is as follows:

"The right of the plaintiff to exercise its banker's lien in the application of funds held by the bank to the payment of indebtedness owing by a depositor, presupposes: (a) That the fund deposited in the bank by the debtor was the property of the latter, (b) that the fund was deposited without restrictions and was not a special fund, and (c) an existing indebtedness then due and owing by the depositor to the bank."

Under the facts in the instant case, we think that the judgment of the district court is equitable and just, and the same is, therefore, affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, HUNT, CLARK, and HEFNER, JJ., concur.

Note.—See 7 C. J. p. 632, §307; p. 660, §358. See 'Banks and Banking," 7 C. J. §358, p. 661, n. 38.