**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

In re: COMMERCIAL FINANCIAL
SERVICES, INC.,

        Debtor,

_____

BANK ONE, OKLAHOMA, N.A.,

        Appellant,

v.

COMMERCIAL FINANCIAL
SERVICES, INC.; UNSECURED
CREDITORS LIQUIDATING
TRUSTEE,

        Appellees.

No. 01-5190
(D.C. No. 00-CV-416-B)
(N.D. Oklahoma)

---

**ORDER AND JUDGMENT** *

---

Before **BARRETT** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal requires us to determine whether the district court erred in affirming a judgment of the bankruptcy court denying appellant Bank One's "Motion for Relief from Automatic Stay and for Order Directing Abandonment." Upon appeal of the bankruptcy court's order, the district court referred the matter to a magistrate judge who recommended that Bank One could not exercise a right to setoff consistent with Oklahoma law and that it did not qualify for Oklahoma's statutory banker's lien. The district court adopted the report and recommendation of the magistrate judge in its entirety. After our review of the pertinent law, the briefs of the parties, and the record, we reverse.

Debtor Commercial Financial Services, Inc. (CFS) is an Oklahoma corporation that was engaged in the business of acquiring portfolios of defaulted credit card receivables and small balance consumer loans and then servicing and collecting the delinquent accounts. [1] CFS financed this operation by transferring the receivables to limited partnerships or corporations it established and then in turn transferring the receivables to a trust. The trust then issued notes and

---

[1] These background facts are taken from the bankruptcy court's order.

2

certificates secured by the receivables to investors who profited through collection of the receivables. Revenue from the notes and certificates provided operating capital for CFS, and CFS collected fees from the trusts in return for servicing the receivables.

In order to facilitate collection of the receivables, CFS opened accounts at Bank One. The account at issue here was titled "CFS Inc. as Servicer for CFS TAPR II LTD & TAPR III LTD," Aplt's App. at 532, and was described by an official of Bank One as a demand deposit account with a lockbox feature ("the account"). That is, there was a particular post office zip code attached to the account. When payments came into the lockbox, bank personnel would open the envelopes, record the amounts, and forward the monies into the account. The receivables in the account were owned by CFS and the TAPR II and TAPR III partnerships. CFS, as servicer, would routinely reconcile the account and occasionally would have to reallocate the monies among the several other accounts it maintained at Bank One.

Additionally, CFS was also a guarantor on a loan to one of its affiliates from a group of lenders. Bank One owned 7½% of the loan. This appeal involves Bank One's attempt to get relief from the automatic stay in order to setoff the amounts owed it pursuant to CFS's guarantee against CFS's money in

3

the account. Alternatively, Bank One argued that it was entitled to the statutory banker's lien as provided in Okla Stat. tit. 42, § 32.

Whether to lift the stay is a matter for the discretion of the judge presiding in the bankruptcy matter and will be reviewed for abuse of discretion. *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987). However, "a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). With regard to the specific underlying issues here, Bank One's right to setoff or to a banker's lien, our standard of review is the same as that governing the district court's review of the bankruptcy court.

> Accordingly we review the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard. A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made.

*Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996) (citations omitted); *see also Driver Music Co. v. Commercial Union Ins. Cos.*, 94 F.3d 1428, 1433 (10th Cir. 1996) (reviewing award of pre-judgment interest for abuse of discretion, but subjecting underlying statutory interpretation or legal analysis to de novo review).

4

"Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995).

> The Bankruptcy Code provides no general equitable mechanism for disallowing rights of setoff that are expressly preserved by section 553. Consistent with the text of section 553, the best statement of modern law and practice is that, if the relevant claim and debt constitute mutual obligations within the meaning of section 553, a right of setoff should be recognized in bankruptcy unless the right is invalid in the first instance under applicable nonbankruptcy law, or unless it is otherwise proscribed by some express provision of the Code.

5 Collier on Bankruptcy ¶ 553.02[3] (Lawrence P. King ed. 15th ed. rev'd. 2002) (footnotes omitted).

In this case, the applicable nonbankruptcy law available to test the validity of Bank One's right to setoff is the law of Oklahoma. In Oklahoma, a setoff is appropriate if: (1) the fund deposited in the bank is the property of the depositor; (2) the fund is not restricted or a special fund or account; and (3) there is "an existing indebtedness then due and owing by the depositor to the bank." *Hall v. Duncan Sav. & Loan Ass'n*, 820 P.2d 1360, 1361 (Okla. Ct. App. 1991). Bank One has the ultimate burden of demonstrating its right to setoff, *see Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996), and funds placed on deposit in a bank are presumed to be those of the depositor and subject

5

to setoff, *see Southwest Nat'l Bank v. Evans*, 221 P. 53, 55 (Okla. 1923).  CFS, as the depositor, can then rebut this presumption by showing that the account is special and thus not subject to setoff.  *Id.*[2]

Thus, the issue in this appeal is whether the account was a special account.

> In general, if the account is held in trust, or is dedicated to a special use, the bank may be prohibited from taking a setoff.  Thus, a bank may be prevented from asserting a right of setoff against a payroll account that the bank knew was dedicated for the purpose of paying the debtor's employees.  Similarly, a bank may be prohibited from taking a setoff against an escrow deposit, or an individual retirement account.

5 Collier on Bankruptcy at ¶ 553.03[3][c][iv] (footnotes omitted).  The name of the account is not controlling, *id.*, and if the depositor retains unlimited discretion and dominion over the account, it will not be considered special, *see* John TeSelle, *Banker's Right of Setoff*, 34 Okla. L. Rev. 40, 46 (1981).

Oklahoma courts have found special accounts to exist where the bank knew that a fund was specifically created as a trust deposit under an escrow contract,

---

[2]    The bankruptcy court cited *Dowden v. Cross County Bank (In re Brittenum & Assocs., Inc.),* 868 F.2d 272, 275-76 (8th Cir. 1989) for the proposition that when the name on an account gives notice of the special nature of the account, the presumption is rebutted.  The account in *Dowden*, however, was entitled "Jon R. Brittenum & Associates, Inc. Special Reserve Account for the Exclusive Benefit of Customers."  *Id.* at 273.  In contrast, the account name here, "CFS as Servicer for CFS TAPR II and TAPR III" indicated that funds in the account belonged not only to third parties but also to CFS.  The name on the CFS account does not indicate that the funds were exclusively for the benefit of entities other than CFS.  Under these circumstances, we decline to find the presumption rebutted here based solely on the name of the account.

6

*see First Nat'l Bank & Trust Co. v. Osage Supply Co.*, 97 P.2d 3, 5 (Okla. 1939); where the funds were deposited in an IRA account, *see Hall*, 820 P.2d at 1362; where the depositor was a livestock commission company handling discrete funds as an agent for a cattle buyer, *see Evans*, 221 P. at 55; and where the depositors were acting as attorneys-in-fact for a third party, and the account was specifically created to pay off the third party's debts *see First Nat'l Bank of Leedy v. W.P. Seawell Lumber Co.*, 274 P. 873, 875 (Okla. 1928).

The bankruptcy court concluded that the account was a special fund and not eligible for setoff. It further found that Bank One could not have a banker's lien on the account because it was a depository account, the relationship between the parties was as debtor and creditor, and Bank One held no money of CFS as bailee to which a banker's lien could attach.

Among the facts relied on by the bankruptcy court and which find support in the record are the following: CFS had rights in the account, as of the petition date, in its capacity as Servicer for CFS TAPR II LTD & TAPR III LTD"; Bank One's obligation on the account was to CFS as servicer; the deposits in the account were generated by virtue of the efforts of CFS, as servicer, in collecting purchased defaulted credit-card accounts; some individual deposits had to be transferred to the accounts of one or more of the securitization trusts or other entities; deposits made erroneously into the account had to be rerouted into the

7

correct lockbox accounts; the lockbox accounts collectively acted as a clearinghouse into which collections were deposited and reconciled by CFS as servicer in connection with its servicing activities; and Bank One was fully aware of the mechanics of the CFS servicer lockbox accounts.

We find these facts, however, go more to a finding that monies from TAPR II and TAPR III were intermingled in the account with funds belonging to CFS rather than to a conclusion that the account was special. As Bank One correctly points out, the fact that CFS's money was commingled in the account with funds of other entities does not defeat its right to setoff against CFS's portion. *See Blackwell Livestock Auction, Inc. v. Cmty. Bank of Shidler, Okla.*, 864 P.2d 1297, 1300-01 (Okla. Ct. App. 1993) (noting bank exercising setoff against commingled funds was required to return funds of third party but not the entire amount of setoff); *see also Bridgeport Co. v. United States Postal Serv.* 39 B.R. 118, 128 (Bankr. E.D. Ark. 1984) (recognizing that the general right to setoff is subject to the rights of third parties where the bank has knowledge or is put on inquiry that a third party has rights in the fund); *see generally* B.C. Ricketts, Annotation, *Bank's Right to Apply Third Person's Funds, Deposited in Debtor's Name, on Debtor's Obligation*, 8 A.L.R. 3d 235 § 13 (1966) (noting authority for the proposition that "a bank's actual knowledge that *part* of the funds in a certain account belong to a third person gives it such knowledge or notice of the third

8

person's interest as to prevent the bank from applying *the third person's funds* on a debt owed by the person in whose name the account is maintained (emphasis added)).

Bank One has never attempted to setoff any funds belonging to TAPR II or TAPR III against the amounts owed it by CFS. Indeed, the parties had entered into a court-approved joint stipulation allocating the account funds among the three entities with rights in the account, so it would have been possible for Bank One to setoff against CFS's funds without disturbing funds belonging to TAPR II and TAPR III.

The fact remains that there is no support in the record for finding that CFS was restricted in any way from accessing its own funds in the account or exercising complete dominion over their disposal. "Accounts specially designated for the depositor's accounting purposes . . . will not be considered special accounts for the purposes of setoff, even if the bank knows of the intended special use, if the depositor retains unlimited dominion over the account." TeSelle, 34 Okla. L.R. at 46 (footnote omitted). The bankruptcy court found that CFS's rights in the account were "subject to its contractual duties toward many entities, including CFS as an owner of some of the assets collected, TAPR II, TAPR III, and the beneficiaries of other lockbox accounts." R. Vol. I at 196. The court further found that CFS could not use the funds in the account for

9

general operating purposes. *Id.* While these findings would probably be enough to sustain a conclusion that the account was a special account, there is no evidence in the record substantiating either CFS's contractual duties to other entities (other than an accounting function owed TAPR II and TAPR III) or that CFS was somehow restricted in the use of its own funds in the account. Specifically, nothing supports the finding that CFS was restricted from using the CFS funds in the account for general operating purposes.

On that point, Bank One identifies evidence in the record showing that CFS requested Bank One to transfer the funds in the account to its debtor-in-possession account at another bank, establishing, according to Bank One, that the account was not special. The magistrate judge refused to consider this argument because he concluded it had not been raised to the bankruptcy court. Because Bank One did not make a formal argument to the bankruptcy court on this point, but merely included the documentary evidence in the record, we will not consider it on appeal. *See Oakland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998) (refusing to entertain a theory presented in the district court in only a vague and ambiguous way).

While it is certainly possible that, because of its long association with this case, the bankruptcy court is correct about the facts marshaled to support its conclusion, we note that CFS presented no witnesses at the hearing on Bank

10

One's motion for relief from stay and offered no documentary evidence to support a conclusion that this account was special and thus not subject to setoff. In both of its briefs to this court, Bank One argued that the lack of evidence in the record precluded affirmance. Under these circumstances, CFS was obligated to identify essential references in the record, *see S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992), or, assuming that such evidence had been before the bankruptcy court, to supplement the record on appeal.

In a footnote, the bankruptcy court implied that Bank One's arguably inequitable conduct would also have barred recovery. Again the record is too sparse for us to be able to affirm on this alternative ground. Because of our disposition of this case, it is unnecessary for us to address Bank One's arguments relative to the banker's lien statute.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED.

Entered for the Court


Bobby R. Baldock
Circuit Judge

11